1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   RICHARD GIDDENS,                        No. 2:19-cv-0019-KJM-EFB PS

11                  Plaintiff,

12         v.                               FINDINGS AND RECOMMENDATIONS

13   SOLANO COUNTY, et al.,

14                  Defendants.

15

16         This case is before the court on defendants' motion to dismiss plaintiff's first amended

17   complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).[1]  ECF No. 38.  For the

18   reasons that follow, the motion should be granted.[2]

19   I.    Factual Allegations

20         The first amended complaint alleges that in June 2018, plaintiff was involved in an

21   altercation at the Solano County Government Center.  ECF No. 24 ¶¶ 14-16.  Plaintiff claims that

22   he subsequently submitted a public records request pursuant to California's Public Records Act,

23   Cal. Gov't Code §§ 6250, *et seq.*, to defendant County of Solano (the "County") to obtain digital

24   video recordings of the incident.  *Id*. ¶ 17.  Shortly thereafter, defendant Daniel Wolk, an attorney

---

[1]  This case, in which plaintiff is proceeding pro se, is before the undersigned pursuant to 28 U.S.C. § 636(b)(1) and Eastern District of California Local Rule 302(c)(21).

[2]  The court determined that oral argument would not materially assist in resolution of the motion, and it was submitted without argument pursuant to Eastern District of California Local Rule 230(g).  ECF No. 45.

1

employed by the County, informed plaintiff that the requested video footage would be ready for pick up within a few days at the Solano County Sherriff's Department. *Id.* ¶¶ 20-21. Plaintiff claims that when he went to pick up the recordings he "was re-arrested and recharged after having the charges dropped."[3] *Id.* ¶ 21. He says that he was released after several hours and ultimately provided video files on a CD, but he claims that he was not provided with the specific video footage he requested. *Id.* Specifically, he contends that although the recording he was provided covered the correct location, the time and date stamps on the files indicated that the recording "appear[s] to be a crude forgery and a fraud." *Id.* ¶¶ 23-24.

The amended complaint purports to assert federal claims under 42 U.S.C. § 1983 for violation of plaintiff's First and Fourteenth Amendment rights, as well as state law claims for violations of California Public Records Act, Cal. Gov't Code §§ 6250 *et seq.*; Article 1, Section 3(b) of the California Constitution; and for fraudulent concealment and misrepresentation. *Id.* at 5-9.

II.     Rule 12(b)(6)'s Standards

A complaint may be dismissed for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Chubb Custom Ins. Co.*, 710 F.3d

---

[3] Plaintiff's original complaint alleged that plaintiff was arrested at the time of the June 2018 altercation and that criminal charges were subsequently filed against him. ECF No. 1 ¶¶ 23, 27. These allegations are omitted from the first amended complaint.

at 956. Dismissal also is appropriate if the complaint alleges a fact that necessarily defeats the claim. *Franklin v. Murphy*, 745 F.2d 1221, 1228-1229 (9th Cir. 1984).

Pro se pleadings are held to a less-stringent standard than those drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). However, the Court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *See Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

For purposes of dismissal under Rule 12(b)(6), the court generally considers only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice, and construes all well-pleaded material factual allegations in the light most favorable to the nonmoving party. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

III.    Discussion

A.    First Amendment Retaliation

Defendants first argue that plaintiff's First Amendment retaliation must be dismissed for failure to set forth sufficient facts to state a claim. ECF No. 38-1 at 5.

"A plaintiff may bring a Section 1983 claim alleging that public officials, acting in their official capacity, took action with the intent to retaliate against, obstruct, or chill the plaintiff's First Amendment rights." *Az. Students' Ass. v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016). To state First Amendment retaliation claim, "the plaintiff must allege that (1) it engaged in constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." *Id*. A plaintiff need not establish that the defendant's actions actually suppressed or inhibited his speech; rather, "a plaintiff need only show that the defendant 'intended to interfere' with the plaintiff's First Amendment rights and that it suffered some injury as a result." *Id*.

/////

3

Here, plaintiff has only alleged the first element of his First Amendment claim. The amended complaint alleges that plaintiff engaged in constitutionally protected speech by filing his public records request with the County. ECF No. 24 ¶ 29 ("Plaintiff had a right to petition for the building security camera video files . . . ."). Making a public records request constitutes protected speech under the First Amendment. *O'Brien v. Welty*, 818 F.3d 920, 933 (9th Cir. 2016).[4] But plaintiff fails to allege facts sufficient to satisfy the second prong for such a claim. The retaliatory action alleged here—failing to provide plaintiff with the correct video footage (ECF No. 24 ¶¶ 30-32)—cannot be fairly characterized as the type that would "chill a person of ordinary firmness" from continuing to make public records requests. *Az. Students' Assn.*, 824 F.3d at 867; *see also Blair v. Bethel School Dist.*, 608 F.3d 540, 544 (9th Cir. 2010) ("[D]e minimis deprivations of benefits and privileges on account of one's speech do not give rise to a First Amendment claim. Rather, for adverse, retaliatory actions to offend the First Amendment, they must be of a nature that would stifle someone from speaking out. The most familiar adverse actions are "exercise[s] of governmental power" that are "regulatory, proscriptive, or compulsory in nature" and have the effect of punishing someone for his or her speech.") (citing *Laird v. Tatum*, 408 U.S. 1, 11 (1972)).

/////

---

[4] The Ninth Circuit held in *O'Brien* that the plaintiff engaged in speech protected by posting his views on a website and making "several public records requests." 818 F.3d at 933. Subsequent to that decision, some district courts in this circuit, without citation to *O'Brien*, have held that a public records request does not constitute protected speech for purposes of a First Amendment retaliation claim. *See, e.g., Brennan v. Aston*, 2019 WL 5225047, at *6-7 (W.D. Wash. Aug. 16, 2019) (concluding that neither the Supreme Court or the Ninth Circuit have decided whether "the First Amendment protects the right to *request* public records," and holding that the plaintiff's First Amendment retaliation claim failed because he did "not have a First Amendment right to request public records."); *Brennan v. Aston*, WL 5225047 (W.D. Wash. August 16, 2019) (same). These cases could be reconciled with *O'Brien* by narrowly reading the Ninth Circuit's decision to hold that submitting a public records request, without making other protected speech, is not protected under the First Amendment. *See O'Brien*, 818 F.3d at 933 (finding the plaintiff expressed his views by "posting on a website his opposition to the student government president and the school administration [and] . . . mak[ing] several public records requests."). The court need not decide whether such a reading is appropriate because, even assuming the act of making a public records request is protected, plaintiff's retaliation claim still fails for the reasons explained herein.

4

In his opposition, plaintiff argues that the retaliatory conduct was placing him under arrest. ECF No. 40 at 3. Although the complaint does allege that plaintiff was arrested when he went to pick up the requested footage, the complaint specifically alleges that he was harmed by defendants' refusal to provide the correct video recording, not by being arrested. ECF No. 24 ¶ 31 ("As a result of Defendants refusal to produce these files, plaintiff was harmed in that he was not given the recordings of what happened at the incident."). However, even construing the complaint to allege an arrest as the retaliatory action, plaintiff still fails allege that his public records request was a substantial motivating factor in the decision to make the arrest, i.e. the third required element for a First Amendment retaliation claim. Thus, the complaint must be amended anyway and clarifying the second prong in an amended complaint is appropriate.

For the above reasons, plaintiff's First Amendment retaliation claim must be dismissed with leave to amend. *Harris v. Mangum*, 863 F.3d 1133, 1142 (9th Cir. 2017) (pro se litigants should be granted leave to amend where it appears "possible that the plaintiff can correct the defect.").

B.     Equal Protection

Plaintiff also alleges that defendants violated his right to equal protection under the Fourteenth Amendment. ECF No. 24 at 5-6.

To state a claim for discrimination under the Equal Protection Clause, plaintiff must allege that defendants "acted with an intent or purpose to discriminate against plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). If plaintiff is not a member of a protected class, he may assert an equal protection claim as a "class of one" by alleging that defendants intentionally treated him differently than other similarly situated individuals and without a rational basis for doing so. *See Gerhart v. Lake County, Mont.*, 637 F.3d 1013, 1021 (9th Cir. 2011); *see also Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (noting that "an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.' "); *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (confirming that the purpose of the equal protection clause, including "class of one"

claims, is to protect against "intentional and arbitrary discrimination"). Discriminatory intent for equal protection purposes "implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected . . . a particular course of action . . . because of . . . . its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. V. Feeney*, 442 U.S. 256, 279 (1979) (citation and quotations omitted).

Here, plaintiff claims that he is member of a "class of one." ECF No. 24 ¶ 6. But he does not allege that he was treated differently than similarly situated persons. For instance, he does not allege that defendants properly responded to public records requests submitted by other individuals that are similarly situated. Accordingly, he fails to state an equal protection claim and it must also be dismissed with leave to amend. *See Harris*, 863 F.3d at 1142.

C.     State Law Claims

Plaintiff also alleges state law claims for violation of Cal Gov't Code §§ 6250 et seq. & Cal. Constitution Art. 1 §3b, fraudulent concealment, and fraudulent misrepresentation. ECF No. 24 at 6-9. But the complaint does not demonstrate that the parties' citizenship is diverse, which precludes diversity jurisdiction over plaintiff's state law claims. *See* 28 U.S.C. § 1332; *Bautista v. Pan American World Airlines, Inc.*, 828 F.2d 546, 552 (9th Cir. 1987) (to establish diversity jurisdiction, a plaintiff must specifically allege the diverse citizenship of all parties, and that the matter in controversy exceeds $75,000). And as explained above, plaintiff has yet to properly allege a federal claim that could support supplemental jurisdiction over a state law claim. *See* 28 U.S.C. §§ 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States), 1367(a) (where the district court has original jurisdiction, it "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction . . . ."). Accordingly, the court should decline to exercise supplement jurisdiction over plaintiff's state law claims. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7. (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims."); *United Mine Workers of*

*America v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of the applicable law.").

IV.    Conclusion

Accordingly, it is hereby RECOMMENDED that:

1. Defendants' motion to dismiss (ECF No. 38) be granted, and plaintiff's First Amendment Retaliation and Equal Protection claims be dismissed with leave to amend;

2. The court decline to exercise supplemental jurisdiction over plaintiff's state law claims; and

3. Plaintiff be granted 30 days from the date of any order adopting these findings and recommendations to file an amended complaint.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  February 19, 2020.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE